UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 05-283-JBC

DEBORAH GILBERT, ET AL.,                                        PLAINTIFFS,

V.              **MEMORANDUM ORDER AND OPINION**

ESTATE OF PAMELA KAY COX, ET AL.,                       DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendant's motion for partial judgment on the administrative record (DE 30). The court, having reviewed the record and being otherwise advised, will grant the motion.

**I.    BACKGROUND**

The defendant, The Guardian Insurance Company of America ("Guardian"), filed the motion presently before the court on February 19, 2007. On March 7, 2007, the court entered an order directing the plaintiffs to respond to this motion within ten days. No response has been filed; therefore, the court will decide the matter based on the current pleadings.

**A.    Factual Background**

Several of the relevant background facts were uncontested even before the defendant filed its presently pending motion. The plaintiffs' decedent insured, Pamela Cox, was employed by Ohi Automotive of America ("Ohi"), and she obtained life insurance from Guardian through Ohi's group coverage consisting of a

Basic Life Policy, worth $45,000, and an Optional Life Policy, worth $25,000.[1] Pamela Cox's son, James Brian Cox, was named as the sole beneficiary of these policies. According to the copy of the policies submitted by Guardian along with its motion, the Basic Life Policy contains an Accidental Death and Dismemberment benefit, which Guardian concedes "serves as a double-indemnity life insurance benefit providing an additional $45,000 coverage if the insured sustains an accidental death." (DE 30-2 at 2.) On July 24, 2004, Pamela Cox died when she drove a motor vehicle off a cliff near her residence. Her son, James Brian Cox, who may have been investigating the incident on foot, also fell from the cliff to his death.

After her death, Pamela Cox's estate filed claims for benefits under the life insurance policies at issue in this suit, including the accidental death benefit provisions. In the motion presently before the court, Guardian claims that "it is now in the process of paying the $70,000 in undisputed basic life and optional life benefits." (DE 30-2 at 4.) In the absence of a response from the plaintiffs, the court will accept this factual claim; therefore, "the only remaining dispute is whether the accidental death benefits are payable." *Id.*

According to the accidental death provisions in the insurance contract, Guardian is liable for accidental death benefits only if the insured "suffer[s] an

---

[1] All references and specific citations to the terms of the insurance policies at issue in this matter are taken from the version submitted by the defendant along with its presently pending motion.

2

irreversible covered loss due to an accident"; moreover, "[t]he loss must be a direct result of the accident, independent of all other causes." (DE 30-3 at 46.) The accidental death provisions in the contract also include a number of specific exclusions, such as Guardian's refusal to "pay for any loss caused directly or indirectly . . . by [the insured's] legal intoxication; this includes, but is not limited to," losses caused by the intoxicated operation of a motor vehicle. *Id.* at 47. In a section setting forth the participant's rights under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), the insurance contract states that "Guardian is the Claims Fiduciary with discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims. Guardian has the right . . . to require such other evidence as needed to decide your claim." *Id.* at 73 (emphasis omitted).

In the motion presently before the court, Guardian suggests that either the accident requirement or the specific "legal intoxication" exclusion is independently sufficient to justify its decision to deny accidental death benefits because Pamela Cox was intoxicated at the time of her death. More specifically, at the time of her death, Guardian claims, Pamela Cox had a blood alcohol level of 0.246. This claim is supported by the police collision report and a toxicology report, copies of which Guardian has submitted along with its presently pending motion.[2] *See, e.g.*, DE 30-5 at 2 (stating that the "toxicology report showed a blood alcohol level at 0.246").

---

[2] As Guardian points out, this blood alcohol level was over three times greater than Kentucky's legal limit of .08.

Moreover, the parties have agreed "to stipulate to the alcohol content of the blood sample taken from Pamela Kay Cox." (DE 20 at 1.) Therefore, the court will accept Guardian's claim that Pamela Cox was intoxicated at the time of her death with a blood alcohol level of 0.246.

**B.     Procedural Background**

Guardian claims that it denied the plaintiffs' accidental death claim in a letter dated July 14, 2005, a copy of which was submitted along with Guardian's presently pending motion.[3] In this letter, Guardian informed the plaintiffs that they could appeal from this adverse decision, and on July 25, 2005, the plaintiffs' former counsel responded with a written request for review. *See* DE 30-7 at 2, DE 30-8 at 1-2. On September 23, 2005, Guardian responded to the plaintiffs' request for review with another letter, informing them that Guardian had conducted "an independent review of the claim facts and the determination made regarding eligibility for benefits" which "determined that [the] original decision was proper." (DE 30-10 at 1.)

In the motion presently before the court, Guardian reiterates many of the arguments previously discussed in this correspondence. More specifically, with respect to the accidental death terms themselves, Guardian argues that "death while driving intoxicated is reasonably foreseeable and, therefore, not an 'accident'

---

[3] By the time Guardian sent this letter to the plaintiffs' former counsel, the plaintiffs had already filed suit against Guardian and the other original defendants in Wolfe Circuit Court, and Guardian had already removed the suit to this court.

4

under the policy." (DE 30-2 at 2.) With respect to the specific exclusion, Guardian argues that most courts have held "an insured with a blood alcohol content exceeding the legal limit trigger[s] 'legal intoxication' exclusions" such as the one at issue in this matter. *Id.* These issues are addressed in more detail below.

## II.     STANDARD OF REVIEW

The parties have stipulated "that this is an E.R.I.S.A. case." (DE 20 at 1.) When a benefits plan specifically grants an insurer or administrator discretion to determine eligibility for benefits, "under ERISA, . . . the denial of benefits or interpretation of the plan by the trustee or administrator is to be overturned only if it is arbitrary and capricious." *Delk v. Ford Motor Co.*, 96 F.3d 182, 190 (6th Cir. 1996); *see also Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996) (holding that "application of the highly deferential arbitrary and capricious standard of review is appropriate only when the plan grants the administrator authority to determine eligibility for benefits or to construe the terms of the plan"). Because Guardian expressly reserved the discretionary authority to determine eligibility for benefits and to construe the terms of the plan in the contract at issue in this matter, the court will review Guardian's denial of accidental death benefits under the "arbitrary and capricious" standard and uphold that denial so long as it was "'rational in light of the plan's provisions.'" *Yeager*, 88 F.3d at 381 (quoting *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991)). In general, "[i]f a state law 'relates to employee benefit plans,' it is pre-empted" under

ERISA, which was "designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987) (quoting 29 U.S.C. § 1144(a), and *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

### III. ANALYSIS

Some jurists have claimed that attempts to define an accident "plunge . . . the law into a Serbonian Bog." *Landress v. Phoenix Mutual Life Insurance Co.*, 291 U.S. 491, 499 (1934) (Cardozo, J., dissenting). Others have noted that although "[c]ase law is fairly consistent in defining an accident," that consistency is the product of "using equally ambiguous terms such as undesigned, unintentional, and unexpected." *Wickman v. Nw. Nat'l Ins. Co.*, 908 F.2d 1077, 1087 (1st Cir. 1990) (citing, inter alia, 1A John Alan Appleman, *Insurance Law and Practice* § 360 (1983)). Nevertheless, whether the test applied "is one of high likelihood, or reasonable foreseeability," in resolving questions similar to those posed by the matter at hand, "federal courts have found with near universal accord that alcohol-related injuries and deaths are not 'accidental' under insurance contracts governed by ERISA." *Eckelberry v. Reliastar Life Ins. Co.*, 469 F.3d 340, 344-45 (4th Cir. 2006) (citing, inter alia, *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1109-10 (7th Cir. 1998); *Walker v. Metro. Life Ins. Co.*, 24 F. Supp. 2d 775, 782 (E.D. Mich. 1997); and *Cates v. Metro. Life Ins. Co.*, 14 F. Supp. 2d 1024, 1027 (E.D. Tenn. 1996), *aff'd*, 149 F.3d 1182 (6th Cir. 1998)).

In reaching this conclusion, many of these courts have adopted the framework set forth in *Wickman*, and decided these cases based on the "'objective analysis . . . [of] whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct[,]'" namely, driving while intoxicated. *Eckelberry*, 469 F.3d at 344 (quoting *Wickman*, 908 F.2d at 1088). Because "'[a]ll drivers know, or should know, the dire consequences of drunk driving[,]'" these courts have generally held that "'the fatal result that occur[s in such cases] should surprise no reasonable person[,]'" and therefore cannot be deemed an accident. *Eckelberry*, 469 F.3d at 345 (quoting *Nelson v. Sun Life Assurance Co.*, 962 F. Supp. 1010, 1012 (W.D. Mich. 1997)).

The court is persuaded by the reasoning in *Eckelberry*, *Wickman*, and elsewhere. The court finds that Pamela Cox was intoxicated at the time of her death, and that a reasonable person in her position would have viewed her death as highly likely to occur as a result of her intentional conduct. The court further finds that Guardian's discretionary review of the accidental death terms of her insurance policy – specifically the terms requiring the loss to be due to and a direct result of an *accident*, independent of all other causes – was rational in light of the plan's provisions. Therefore, under the "arbitrary and capricious" standard of review, the court will not overturn Guardian's decision to deny the plaintiffs the $45,000 in

7

accidental death benefits.[4]

In their joint report about their Rule 26(f) planning conference, the parties provided the following description of the claims at issue in this suit:

> The Plaintiffs allege that the Estate of James Brian Cox is entitled to the proceeds from three policies of insurance held by Pamela Kay Cox with The Guardian Insurance Company of America. The Defendant, The Guardian Insurance Company of America, admits that either Leon Roark, the Estate of Pamela Kay Cox, or the Estate of James Brian Cox is entitled to the proceeds from two of the policies of insurance but denies that anyone is entitled to proceeds from the double indemnity policy of insurance held by Pamela Kay Cox . . . as a result of her intoxication at the time of her death, which is an exclusion under said policy. The Defendant, Leon Roark, alleges that he is entitled to the proceeds from all three policies of insurance as the father of James Brian Cox.

(DE 20 at 1.) On January 30, 2007, the court dismissed the counterclaim and

---

[4] In its unopposed motion, Guardian also discusses the specific "legal intoxication" exclusion in the insurance policy. More specifically, Guardian urges the court to decide this matter under the legal intoxication exclusion and to ignore the Supreme Court of Kentucky's holding in *Healthwise of Ky., Ltd. v. Anglin*, 956 S.W.2d 213 (Ky. 1997), under ERISA's preemption clause. In the alternative, Guardian asks this court to decide this matter under the legal intoxication exclusion by recognizing that *Healthwise* may no longer be valid law. The court need not and will not reach these issues, however, because the court's findings and conclusions about the basic accidental death terms of the policy are sufficient to decide this case.

     The court further notes that its factual finding that Pamela Cox was intoxicated at the time of her death has no bearing on the Supreme Court of Kentucky's reasoning in *Healthwise* about "legal intoxication." In *Healthwise*, the Supreme Court of Kentucky recognized the fact that the relevant party was "seriously intoxicated" while also holding that he had not "attained the status of being legally intoxicated" because that issue had not been resolved in a proceeding in which a "criminal penalty would attach to the adjudication." 956 S.W.2d at 216, 218. Based on the uncontested evidence presented by Guardian and the parties' stipulation, this court simply recognizes the fact that Pamela Cox was intoxicated at the time of her death, without deciding whether she was "legally intoxicated" as discussed in *Healthwise*.

cross claim filed by Leon Roark in this matter. (DE 29 at 1.) Therefore, the court will direct the parties to show cause within ten (10) days of the entry of this order why this matter should not be dismissed. Accordingly,

**IT IS ORDERED** that the defendant's motion for partial judgment on the administrative record (DE 30) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall show cause within ten (10) days of the entry of this order why this matter should not be dismissed.

Signed on July 9, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY